Thank you. Our third case for this morning is number 19-1504, United States against Jason Nebinger. So, Mr. Hillis, are you on the line? I am, Your Honor. You may proceed. Thank you. You may plead the court, counsel. Mr. Nebinger raises three claims, a rape challenge, a challenge to weather his Illinois conviction for the controlled substances is an ACCA predicate, and weather his Illinois residential burglary conviction is an ACCA predicate. As for the first claim, the rape challenge, Mr. Nebinger recognizes this court's Williams decision is adverse in controlling precedent. At this point, he's merely preserving the issue and even at the cert petition. Unless the court has questions, I don't have anything further to add. As for the two remaining counts, I'll begin by noting that as with the rape decision, the Della Tora and Glispie cases represented supervening decisions by this court that, in our view, allow these claims to move forward despite the government's reliance on the mandate rule and the law of the case doctrine. These are simply claims that could not have been raised before, and as we noted in our 28-J letter that we submitted and the government's responded to, these are the sort of claims that, had we raised them, they would have been of the type that, without supporting authority, would have, quote, been clogging the pipes. And so rather than go forward on claims that are clearly rejected by precedent, Mr. Nebinger waited until he had support. And insofar as the government's 28-J letter references appellate counsel's efforts in the Glispie case to move forward, the government filed a motion for summary affirmance in that case, and that tells you pretty strongly what the government thought the merits were. And I don't think this court would want parties to be raising claims from their sovereign citizen clients and the like in order to preserve them in the event of some change in the case that you have support in the trial level to agree to the claims that we are making on the appeal based on De La Torre and Glispie. So could I ask you, though, on, well, on the De La Torre, we're talking about the use of his prior state drug conviction, right, as the act of predicate. Yes. And it just seems to me that every state statute in every corner of the country, you know, has been challenged on this basis, and this is a redo, basically. He didn't challenge that prior state drug conviction, and I don't see why any later cases have now made this newly available to him. We've been for a long time that the categorical approach applies to this. You know, I'm very sympathetic to not clogging the pipelines, but you do have an obligation to raise arguments for your client, and so many of these arguments were successful as we've picked through all the state laws one at a time. So I guess my concern is waiver. I mean, I don't always find waiver, but my concern is why on this prior state drug conviction as a predicate, why you haven't waived? Well, there was no authority deciding this issue specifically, and there still isn't. I believe this case would be the first. And furthermore, it wasn't until the very recent decision in Elder that this really began. I can't think of one prior to Elder. Elder involved a different statute, of course. It was an Arizona statute, and then I don't believe that Illinois statute was considered even the specific provision, of course, wasn't considered at all. But the Illinois statute, I think, was first considered in Delaware, which was decided after the opening brief, I recall, was filed in this case. It certainly hadn't been determined at the time this case was back in the stream of authority that would allow counsel to have made this claim. But the nature of the argument was surely available to you. I mean, I realize, again, they're just statute books worth of statutes that we've been testing to see whether this is a good act of predicate and whether this matches using the Taylor methodology or it doesn't. And there's a concern, of course, for finality. You can't use the accident of a remand on one thing to reopen the whole range of arguments. That's true, but we think the supervening decision doctrine is a separate consideration for that. And while we've had categorical analysis been done, it seems a steady stream of it coming for the violent felonies, we have not really seen it being embraced in the effort, rather in the arena of drug convictions. And so I would point out that distinction. I would say that the categorical approach, sure, it's been around, but the support for this particular effort, I don't really think existed until Delatore. So conceptually, I agree, categorical approach has been around, but in terms of support for the proposition, it has not existed in our view until the Delatore case. And that's been our strongest support for this argument. And of course, it came after the case came out of the trial level. So that's as much as I can offer, Your Honor. If I may move on to the merits, though, I would like to talk about how the categorical approach benefits Mr. Nevinger in this particular case. Sure, go ahead. I mean, from my point of view. Thank you. So Delatore instructs courts to use the categorical approach to decide if a state conviction is a qualifying predicate. But the state law doesn't mirror the federal statute or the state statute is narrower than the federal statute. And the state conviction can't be used to enhance the federal punishment. The Illinois statute criminalizes positional isomers of cocaine, but the federal law does not. Because Mr. Nevinger's Illinois statute of conviction doesn't mirror the federal statute and is broader than the federal statute, his Illinois conviction was improperly used to increase his sentence to the 180-month sentence he received. Illinois knew how to write a statute to exclude positional isomers. So this court must accept the inclusion was intentional. And also, no positional isomers. Mr. Ellis, could I ask you, we're being told on the other side that positional isomers are, in essence, almost imaginary or not encountered in the real world. And I was wondering if you could address the language from Quarles, which under the Interim Criminal Act, resorted back to echo the language from Taylor about looking to whether statutes substantially correspond to the federal standard, which might suggest that there's at least a little room for inexactness in the fit. Right. The problem we have with that position is that this is not some overactive defense counsel imagination on the subject. These are substances that have been specifically considered to be a risk by the Illinois legislature, and they're not nearly theoretical. So we have instances, the government points them out, and it's believed, where positional isomers have been created since 1896. It would have been in 1955, 1978. The Illinois legislature apparently saw fit to get ahead of this problem and to list these things as substances, even if they aren't produced on the same level and extent and trafficked as often as any other substance. They are something that the Illinois legislature elected to consider and to make part of the criminal code in Illinois. And so the fact that they're a small number, or maybe even something that we may never see as a prosecution, it does not mean that the Illinois statute is now not subject to the categorical analysis, despite what the language in Quarles says. Quarles did not make this a claim that this court shouldn't consider. The considerations in Quarles are meritorious, but nevertheless, the inclusion by the legislature of this positional isomer makes the Illinois statute broader than the federal statute, and therefore, under the categorical approach, it should not be a basis for an act of predicate. So you're taking that position even if, as I understand may be the case, there's actually never been a prosecution in Illinois focused on positional isomers. Right. Your Honor, I don't think the categorical approach looks to whether there's ever been a prosecution. It simply compares elements. And so it doesn't matter. Well, but does that take into account the substantially, I mean, the qualifying language that Judge Hamilton mentioned? I mean, never seems like an extreme low, I guess. Right. Quarles, we acknowledge what it says. However, the ability to prosecute for these things, you can take into account. And so we have listed all sorts of offenses that are subject to prosecution, and there's a small number of them. I mean, pick your bizarre ordinance that you can look for them where a donkey can't be kept in a bathtub or something along these lines. The fact that it's not commonly prosecuted doesn't mean that a person shouldn't be subject to the protections that the law affords them. And the categorical approach is something that protects my client here in this case, regardless of the few instances or lack of instances where this has ever been prosecuted by some member of the executive branch. So we rely on the protections that are afforded by the law. And here I believe that categorical approach benefits Mr. Nebinger. Other questions about the divisibility or indivisibility of the statute? Because I'm happy to discuss that. We believe that this is very clearly an indivisible statute. And if you look to the judgment, even as Najira Rodriguez would suggest that maybe it's possible here, we would see that Mr. Nebinger's judgment doesn't specify what substance he was convicted of. And that's found at the opening brief appendix, page 14. So I did want to briefly comment on that in case the court had questions about divisibility, because we believe it's an indivisible statute. Yeah, I think the divisibility issue is affected also by the question, how perfect a match does the federal statute or the federal, you know, generic or the federal statute in this instance and the state law be? They don't seem to be all that different, but one can certainly find differences between them. Correct Your Honor, we believe that shows... State Circuit's decision to the Jones case, which found no material distinction between the term analog and the Illinois statute and the federal term. Yeah, I don't regard that to be an especially rigorous or compelling analysis. And I think, of course, the court can regard that as persuasive authority. But in light of Della Tora, I don't know that the State Circuit's case holds up especially well relative to the Illinois statute. And so far as anything suggesting that the lack of record evidence is a problem here, we would encourage this court to then remand if that's a problem, so that everybody can get this sorted out. These issues are going to continue to come through the court, and we would like the opportunity to provide any additional factual information that we couldn't provide due to the procedural circumstances of the case. But I don't think that a chemist could stand before the court and say that these substances don't exist, can't be made, et cetera. So as to say that they are the equivalent of fairy dust, which I think that's been a concern, but I believe it's over a lot because this is a substance that can be created, and it is something that Illinois is criminalized. So Mr. Hillis, you're down to a little more than two minutes if you want to save something. I'm going to talk briefly about residential burglary, but I will say this. It is, again, subject to the categorical analysis. Because Illinois allows for a conviction for residential burglary without proof of unlawful entry, we think that the statute is overbroad. However, we would ask that the court not reach the issue until the Illinois Supreme Court resolves the Glispie case, since it's been a certified question from this court to the Illinois Supreme Court. With that, I reserve the balance of my time. Thank you. Mr. Walters, are you here? Good morning, Your Honors. Greg Walters on behalf of the United States, and may it please the court. The scope of the remand from the first appeal was clear, or directing the district court to resentence Mr. Nevinger in light of Smith versus United States. And the exceptions to that are also clear, either a subsequent factual discovery or changes in the primary issue on which my colleague, Mr. Hill, is focused, that being the distinction between the definition of Illinois cocaine and federal cocaine. There has not been an intervening change in the law, nor has there been an intervening change in the law regarding applying the categorical approach. The foundations for that argument have been in existence since Taylor in 1990, the rationale being we don't want to go through a mini trial of sentencing added to that Sheppard in 2005, in which the court added the underlying concerns about the Sixth Amendment. That argument was fully available to Mr. Nevinger during his first appeal, had he wanted to raise it as an alternative ground for affirmance regarding the court's decision. You know, that's an interesting question, though, Mr. Walters, that you raised, because the first appeal was indeed an appeal where the government was the appellant. And that, to me, has some significance not only for the analog drug similarity question, but also the Dawkins point that you make. I don't see why Mr. Debinger had any obligation to support the decision below with everything he could throw at it. I mean, he won below, and you managed to get the district court to reverse, but I don't think that's a situation where he has forfeited anything. And I certainly think his request that we should hold off on saying anything about that until we learn from the Illinois Supreme Court what it wants to do with GLSBI is a very reasonable one. Can you give us a good reason not to stay this for GLSBI, at least? Perhaps in light of GLSBI, I would agree. I was focusing on the ISMR issue, though, and the general privilege of an appellee, the same as appellant, to renew on remand arguments preserved in the district court gives way to the mandate rule. This court said so. So regardless of which side he was on, that he had the obligation, if he wanted to preserve the judgment of arguing alternatively. And so this court, in seeing the first appeal, saw as he represented there was one issue, one issue only, and whether Smith should be overruled. And he asked for full briefing on, excuse me. I was going to say there is an important difference between the two, because he had prevailed in the district court on the Smith, I'll call it Smith-Dawkins-GLSBI issue. He had lost in the district court on the ACCA, the prior drug conviction, right? So he would have had to cross-appeal, I suppose. Well, no, I don't believe he would have had to have cross-appealed. And I think he could have remained as appellee to argue an alternative ground for affirmance, his forfeited argument in the first sentencing hearing, as well as now the second, that his drug trafficking conviction was not an ACCA predicate. So you think he had the obligation to knock out every ACCA predicate as appellee in the first appeal? No, I believe he had the obligation, though, to argue alternatively that he's not, that he was incorrectly designated as an, as a armed career criminal. If, if the court improperly considered him, or improperly considered the second conviction, or the drug trafficking conviction to which he didn't object. But, I mean, it's, the court's remand is only going to be defined by the issues that were raised. And the mandate here was clear to decide to do the resentencing in light of Smith, nothing more. And Smith was clear that at least the locational element of burglary, Illinois residential burglary, is not broader than the locational element of generic burglary. But getting back to, even if the court were to consider the isomer issue that Mr. Nebinger has now raised for the first time in this successive appeal, to pick up again on Judge Hamilton's question about substantial correspondence, what they focus on is one solitary difference between the definitions of cocaine by the state and of the federal government. These definitions substantially correspond. And then if we look even more particularly at the definition of an isomer, whether it's a stereo isomer, constitutional isomer, or what some would call positional isomer, is that it's each of two is going to have the same molecular formula of the underlying molecule cocaine. 17 carbons, however many hydrogens, nitrogens, and oxygens. And so we are getting down to the organic chemistry level. And given that they have the same molecular formula, it's hard to argue that they don't substantially correspond, even though positional isomers are included in the federal definition. And then when we look at the larger impact, policy-wise, of basically getting a recidivist act, not only from this state, but given the divergence of definitions among states concerning cocaine, just from a policy perspective, that's very, very problematic to seize on this modest difference to create what is in essence a windfall for recidivist defendants. Why isn't that an argument for either the Supreme Court to reconsider its categorical approach, which has certainly kept all of us gainfully employed, and secondly, perhaps an argument even for Congress, which could write a different statute if it wanted to. Your argument depends on the idea that the Illinois legislature was just throwing in surplusage when it added positional isomers. Different isomers have different effects sometimes, the location of where these things are on the chain. And you've argued maybe it does here. We agree that it could have a different effect. I think, though, our argument first is based on the fact that we're here under the plein air standard. And yes, we would like the Supreme Court to reconsider the categorical approach, but we even think that based on the categorical approach as applied by the court, and cautioning most recently in quarrels not to seize on modest differences between state and federal laws, and although they said that in the context of generic burglary, we think it applies equally here of looking at the modest difference between a positional isomer that has the same compound as cocaine. And to pick up on your question, we think that, or I think the point you're making that related to that is the no realistic probability. But without getting into that part of the analysis is just looking at the two definitions, putting Illinois' definition next to the federal definition and seeing that these substantially correspond even if, even when we see the positional isomers included in one and not the other. But then added to that, we do think that De La Torre left open the argument regarding realistic probability, given that the footnote in that case that said that the court took no position on the scientific merits and did not limit the government's ability to present such arguments in future proceedings. Here, we didn't have the opportunity to present the realistic probability argument because he never raised it. He never raised the positional isomer argument below. And the answer is not to remand, particularly on a double forfeited issue and say, well, we now get a third opportunity. The answer is to apply the plein air standard and ask, is this clear or obvious that there is a suggested it is not clear or obvious. And so he shouldn't get the benefit of a remand to then further develop this argument that he failed to make twice at either of his sentencing hearings. I wanted to address quickly, and I'm not sure Mr. Hillis was talking about the indivisibility of the statute if he was talking about section 401 as a whole or just getting down to the definition of cocaine or cocaine or analog thereof. I think the divisibility, just to be clear, the divisibility of section 401 as a whole is very clear given the different penalties based on different amounts and different types of drugs that is very similar to the federal statute. As far as the divisibility of the phrase, cocaine or analog thereof, we, as we argued in our brief, we do believe that's divisible because if you're going to prove cocaine was the substance, then you just, the analysis is that it meets that definition of cocaine set forth in the Illinois statute, whereas- That's almost always the case when you have, you know, under Mathis, when you have a means question, not an elements question. There aren't, there's no differentiation among controlled substance counterfeits or analogs as long as it's the same thing. So I don't know why this, why we shave it up that far. Well, I think you can shave it up based on what, I mean, elements are the things the prosecution has to prove based on Mathis. So- But you can prove different means of, you know, so there's a controlled substance and you have three different ways of showing that that controlled substance is there, either the controlled substance itself, a counterfeit, or an analog, right? Well, first to get to the distinction, or I would say non-distinction between the term controlled substance or counterfeit substance, the Illinois definition of counterfeit substance is that, so for example, cocaine as a counterfeit substance would actually be cocaine, but it's mislabeled, is my understanding. So you would still have to prove it's cocaine. I think the difference though, between proving something as cocaine versus proving it's analog is looking at the definition of Illinois, or Illinois's definition of analog, where I, one, I have the state would have to prove the chemical structure is substantially similar. Second, that it has a stimulant, or excuse me, that it's not a controlled, so it's intended for human consumption. Secondly, it's not a controlled substance. And then there's a third part of that definition that it either has a produce the same effect. And so I think those are different, frankly, elements of proof. When we get down to, if we're going to look at the visibility of a statute on a microscopic level, then we need to be able to also look at the definitions of those two on a microscopic level, and they are, in fact, different, and analog is proving it something is analog. But that's always true when they're different means. You know, one kind of weapon versus another kind of weapon, the evidence is going to be different, but the Supreme Court has instructed us that there's a difference between means and the generic element, you know, a dangerous thing, if you will. Right, and the difference being is what the government has, what the state has to prove. Well, but it doesn't, just because the evidence is different doesn't mean you aren't proving that somebody used one of the forbidden means, but means number one isn't going to be proven by the same evidence as means number two or means number three. But the same is, but if we take math as his definition, Your Honor, that the things, elements are the things that the prosecution must prove. Right, right. And we look at, and we look at the Illinois statute that says, here's the definition of analog. So if you're going under an analog theory, you have to prove that it was intended for human consumption. It is not a controlled substance, which is the opposite of proving something is cocaine. And then one of the other alternatives, and it either has a substantially similar chemical structure or was intended to have that effect of cocaine. Okay, you're about out of time. So if you want to, if you want to wrap up, I should have warned you at the one minute mark, but you're at the eight second mark now. That's not a problem. We just rest on our brief regarding the other arguments when asked that Judge Shannon. Thank you. Thank you very much, Mr. Walters. Anything further, Mr. Hillis. Briefly, Your Honor, because this is an important point, it needs to be emphasized. Every single Illinois case could be an ice mark of cocaine cases as opposed to cocaine. We don't know. We look at the judgment in Mr. Nevenger's case. It doesn't require the court to specify what the substance is. The Illinois Patent and Jury Instruction 17.17 is the same thing. And it's hard to square differences of conduct per quals when talking about whether burglary or something falls within the definition versus things that make a substance qualitatively different than another substance such that it is a consideration here. And finally, in Delatora, that was a plain air case, and it allowed relief. We believe that that same, that question allows for relief here, notwithstanding the difficulties of plain air review. And with that, I have nothing further. All right, then. Thank you very much, Mr. Hillis. Thank you, Mr. Walters. We will take this case under advisement.